USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 1/31/20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x
PERNELL WARREN,

                              Plaintiff,

      -against-                                           18-CV-4410 (ALC)

                                                     **OPINION & ORDER**

THE CITY OF NEW YORK, ET AL.,

                              Defendants.

------------------------------------------------------------- x

ANDREW L. CARTER, JR., District Judge:

Plaintiff Pernell Warren brings this action, *pro se*, under 42 U.S.C. § 1983 against the City of New York, Warden Dunbar, Captain Bolanos, and Captain Black (collectively, "Defendants") alleging that Defendants violated his constitutional rights by serving him contaminated food, by deliberate indifference to his medical needs, and through a municipal policy, custom, or practice of such violations. For the reasons set forth below, Defendants' motion to dismiss is **GRANTED**.

## BACKGROUND

The following facts are taken from allegations contained in Plaintiff's Amended Complaint and are presumed to be true for purposes of this motion.

Plaintiff alleges that on October 11, 2017, during dinner at the Manhattan Detention Complex, he began to feel dizzy and nauseous. Amended Complaint at 4. He then saw other detainees vomiting around him. *Id.* After he returned to his cell, he suffered stomach pains, vomiting, and diarrhea. *Id.* The corrections officer who saw Mr. Warren in this condition called for medical attention, and Captain Bolanos came almost two hours later. *Id.* When Captain Bolanos arrived, she did not provide Mr. Warren with immediate medical attention. Instead, he was told by a John Doe officer that if he sought medical attention, he would be placed in a gang unit. *Id.* The

1

next day, Mr. Warren received treatment (milk of magnesia and ibuprofen) for his illness. When another detainee brought the doctor a sample of the food from October 11, the doctor purportedly said "it appeared to be some type of rat poison." *Id.* Finally, on October 13, Captain Black came to the housing units and made "jokes about if we was dead from the rat poison." *Id.*

Plaintiff filed his complaint, *pro se*, on May 17, 2018. ECF No. 2. The Court dismissed Plaintiff's claims against the New York City Department of Corrections, ECF No. 6, and granted Plaintiff leave to file an amended complaint, ECF No. 18. On May 9, 2019, Defendants City of New York and Warden Dunbar filed a motion to dismiss Plaintiff's amended complaint. ECF No. 22. In this motion, Defendants City of New York and Warden Dunbar requested that the relief granted to the City and Warden extend to Captain Bolanos and Captain Black. ECF No. 22 at 1, n.1. Plaintiff did not respond or file any opposition to the motion to dismiss. The Court ordered Plaintiff to show cause as to why Defendants' motion should not be deemed unopposed. ECF No. 25. Plaintiff did not respond. Accordingly, Defendants' motion is deemed unopposed.

## STANDARD OF REVIEW

When resolving a motion to dismiss under Fed. R. Civ. P 12(b)(6), a court should "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). Thus, "[t]o survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). However, the court need not credit "[t]hreadbare recitals of the elements of a cause of action,

2

supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Moreover, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Id.* at 663.

Taking this standard into consideration, "[a] document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted). In particular, "the pleadings of a pro se plaintiff must be read liberally and should be interpreted to raise the strongest arguments that they suggest." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

"To state a claim under § 1983, a plaintiff must allege that (1) the challenged conduct was attributable at least in part to a person who was acting under color of state law; and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." *Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999). A complaint under § 1983 "must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more

than broad, simple, and conclusory statements are insufficient to state a claim under § 1983." *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 887 (2d Cir. 1987).

## DISCUSSION

Read liberally, Plaintiff's complaint alleges that Defendants violated his constitutional rights by serving him contaminated food, by their deliberate indifference to his medical needs, and through a municipal policy, custom, or practice of such violations (i.e., *Monell* liability). All three of Plaintiff's claims are dismissed because he does not adequately plead these causes of action.

### I. Constitutional Violations[1]

Plaintiff alleges that Defendants violated his Fourteenth Amendment due process rights by serving him food contaminated with rat poison and by their deliberate indifference to his medical needs.[2] In order to state a claim under the Fourteenth Amendment, plaintiffs must demonstrate that (1) "the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process," and (2) "the officer acted with at least deliberate indifference to the challenged conditions." *Darnell v. Piniero*, 849 F.3d 17, 29 (2d Cir. 2017).

#### A. Contaminated Food

---

[1] Because the Court finds that Plaintiff has not adequately alleged that any of the Defendants violated his constitutional rights, it does not address the issue of qualified immunity. However, the Court notes that, in addition to proving a constitutional violation, in order to overcome qualified immunity, Plaintiff would also need to demonstrate that any constitutional right was "clearly established" at the time of the alleged conduct. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).

[2] In his Amended Complaint, Plaintiff does not specify whether he was a pre-trial detainee or a convicted prisoner when the alleged constitutional violations occurred. *See* Defendants' Motion to Dismiss (ECF No. 23) at 4. If Plaintiff was a pre-trail detainee, the broader protections of the due process clause of the Fourteenth Amendment would apply; whereas if plaintiff was a convicted prisoner, then the Eight Amendment's prohibition on cruel and unusual punishment would apply. *See Iqbal v. Hasty*, 490 F.3d 143, 168 (2d Cir. 2007). Here, the Court affords the *pro se* Plaintiff the benefit of assumption that he was a pre-trial detainee at the time of the alleged constitutional violations.

4

Pre-trail detainees and prisoners are entitled to "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983) (citation omitted). Generally, "a single incident of contaminated food does not rise to the level of a substantive due process violation." *Roundtree v. City of New York*, No. 15-CV-8198, 2018 WL 1586473, at *8 (S.D.N.Y. Mar. 28, 2018).

Plaintiff alleges that Defendants violated his constitutional rights by serving him food that contained rat poison. His claim, however, fails both the objective and subject prong of the Fourteenth Amendment due process test. Plaintiff does not sufficiently allege that the food he ingested was contaminated with rat poison. The only support for this proposition is that another detainee brought a doctor a sample of food, and the doctor opined that the food "appeared to be some type of rat poison." Amended Complaint at 5. The Court has no basis to know whether the doctor in fact made these statements, whether the food provided by the other detainee was the same food that Plaintiff ingested, or whether the doctor had any basis for making these statements. Moreover, Plaintiff at best alleges a single incident of contaminated food and "does not include in his complaint any facts regarding the duration of the unsanitary condition or whether his meals were frequently contaminated as a result." *Ballard v. Lane*, No. 18-CV-1721, 2019 WL 1129158, at *3 (S.D.N.Y. Mar. 12, 2019).

Plaintiff's claim also fails the subjective prong of the due process test. Plaintiff must demonstrate that Defendants acted "with at least deliberate indifference" to the challenged conditions, or that they "knew, or should have known" that the food was contaminated. *Darnell*, 849 F.3d at 35. This "requires proof of a *mens rea* greater than mere negligence." *Id.* at 36. Plaintiff does not connect Defendants to the contamination of the food, nor does he allege that Defendants

5

had any prior knowledge that the food was contaminated. Plaintiff does allege that, after the fact, Captain Black "came to the housing unit making jokes about if we was dead from the rat poison." Amended Complaint at 2. This alleged joke about an alleged constitutional violation, while deeply troubling, is not enough to establish that "the Defendants knew or should have known that the manner in which they served Plaintiff his food resulted in its contamination." *Ballard*, 2019 WL 1129158 at *3.

### B. Deliberate Indifference to Medical Need

Next, Plaintiff alleges that Defendants violated his constitutional rights through deliberate indifference to his medical needs. The night that Plaintiff felt sick, Captain Bolanos took close to two hours to come to Plaintiff's housing unit and even then, Plaintiff was left in his cell overnight despite his vomiting, stomach pain, diarrhea, and headache. For a deliberate indifference claim, "the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (internal quotation marks omitted). This objective prong of the test is focused on the delay in treatment rather than on the underlying medical condition alone. *See Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003). Plaintiff must also satisfy a subjective prong by demonstrating that Defendants "recklessly failed to act with reasonable care . . . even though the defendant-official knew, or should have known, that the [delay in medical care] posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35.

Plaintiff's deliberate indifference claim fails both the objective and the subjective prong of the Fourteenth Amendment due process test. While Plaintiff did indeed suffer food poisoning, he has not demonstrated that this "medical condition is sufficiently serious." *Salahuddin v. Coord*, 467 F.3d 263, 280 (2d Cir. 2006). Food poisoning and the resulting pains alleged by Plaintiff—

6

including vomiting, diarrhea, and stomach pain—are not generally capable of producing "death, degeneration, or extreme pain." *Hathaway*, 99 F.3d at 553; *see e.g.*, *Roundtree*, 2018 WL 1586473, at *8 ("The sole incident of food poisoning did not pose an immediate danger to [Plaintiff's] health, especially when contrasted against other cases in which courts have found serious violations pertaining to spoiled food.").

Plaintiff has also not demonstrated that, by taking two hours to attend to him and by leaving him in his cell overnight, Captain Bolanos "recklessly failed to act with reasonable care . . . even though [she] knew, or should have known, that the [delay in medical care] posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35; *Roundtree*, 2018 WL 1586473, at *8 ("And though the Complaint alleges that Roundtree was sick and left alone in his cell until the next day, that allegation alone does not rise to the level of 'criminal recklessness' or conduct amounting to something 'more than ordinary lack of care for the prisoner's interest or safety.'"). Plaintiff's illness was treated by doctors with milk of magnesia and ibuprofen the very next morning after he fell ill. Amended Complaint at 5. Moreover, Plaintiff's illness was not sufficiently severe such that Captain Bolanos acted recklessly in failing to attend to him for almost two hours, and then in delaying medical treatment overnight.[3] This does not rise to the level of producing "death, degeneration, or extreme pain," nor has Plaintiff demonstrated that the Defendants acted with "a *mens rea* greater than mere negligence." *Darnell*, 849 F.3d at 36.

## II. *Monell* Liability[4]

---

[3] Plaintiff also alleges that he was threatened to be placed in a gang unit if he went to receive medical treatment. Amended Complaint at 5. While any such threat would be inappropriately, it is irrelevant, as Plaintiff has failed to meet the objective prong of the test and nevertheless received medical treatment the very next morning.

[4] If Plaintiff fails to show that the individual defendants committed underlying constitutional violations, then his municipal liability claims must fail. *See Askins v. Doe No. 1*, 727 F.3d 248, 253-54 (2d Cir. 2013) ("Where the plaintiff does proceed against both the municipal actors alleged to have inflicted the tort and the municipality that promulgated the offensive policy, the plaintiff's

Under *Monell v. Dep't. of Soc. Servs.*, liability may be imposed "on a government that, under color of some official policy, causes an employee to violate another's constitutional rights." 436 U.S. 658, 692 (1978) (internal quotation marks omitted). To state a prima facie case of municipal liability, a plaintiff must allege: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (quotation marks and citation omitted). A plaintiff may satisfy the "policy or custom" requirement by alleging one of the following: "(1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees." *Brandon v. City of New York*, 705 F.Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted).

Plaintiff brings claims against the City, but fails to allege any specific facts that demonstrate a policy or practice of denying constitutional rights and fails to allege inadequate training or supervision. In fact, other than naming the City of New York as a defendant in his Amended Complaint, Plaintiff alleges no facts against the city. At most, Plaintiff points to the single, alleged violation of his constitutional rights. Normally, "a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the

---

failure to secure a judgment against the individual actors would, indeed, preclude a judgment against the municipality if the ruling in favor of the individual defendants resulted from the plaintiff's failure to show that they committed the alleged tort."). However, out of an abundance of caution, the Court briefly addresses his municipal liability claims.

[municipality]." *Newton v. City of New York*, 566 F. Supp. 2d 256, 270 (S.D.N.Y. 2008). "To survive a motion to dismiss, Plaintiff cannot, through conclusory allegations, merely assert the existence of a municipal policy or custom, but must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." *Woodhouse v. City of Mount Vernon*, 2016 WL 354896, at *7 (S.D.N.Y. Jan. 27, 2016) (quotation omitted). Plaintiff provides no such allegations, and as such, his *Monell* liability claim fails.

III. **Leave to Amend**

Generally, "[a] *pro se* complaint 'should not [be] dismiss[ed] without [the Court] granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (citing *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991)). Here, Defendants filed a letter motion for a pre-motion conference in anticipation of their motion to dismiss. ECF No. 13. This letter motion contained substantially the same arguments presented in the motion to dismiss and the same arguments that led the Court to grant Defendants' motion to dismiss. After receiving this letter motion, the Court held a telephone conference and granted Plaintiff leave to amend his complaint to address these deficiencies. ECF No. 18. Plaintiff took advantage of this leave and filed an Amended Complaint. Since Plaintiff has already been given the opportunity to amend his complaint to correct the deficiencies identified in this Opinion, the Court declines to provide Plaintiff leave to amend his complaint again.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is **GRANTED.** The Clerk is respectfully directed to close this case.

9

**SO ORDERED.**

Dated:     January 21, 2020
           New York, New York

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**